IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                    2:13-CR-00463-BR

                Plaintiff,                   OPINION AND ORDER

v.

JOHN M. WASSON,

                Defendant.


**S. AMANDA MARSHALL**
United States Attorney
**JENNIFER J. MARTIN**
Assistant United States Attorney
1000 S.W. Third, Suite 600
Portland, OR  97204
(503) 727-1087

         Attorneys for Plaintiff

**ERNEST WARREN, JR.**
Warren & Sugarman
838 S.W. First Avenue
Suite 500
Portland, OR 97204
(503) 228-6655

         Attorneys for Defendants


1 - OPINION AND ORDER

BROWN, Judge.

This matter comes before the Court on Defendant John M. Wasson's Appeal (#3) of the Judgment entered in this matter by Magistrate Patricia Sullivan on September 30, 2013.

For the reasons that follow, the Court **AFFIRMS** the Judgment.

## BACKGROUND

The following facts are taken from evidence and exhibits adduced at trial:

On March 28, 2012, Defendant John M. Wasson submitted a Notice of Intent (NOI) to United States Forest Service District Minerals and Special Use Administrator Christine Helberg in which Defendant set out his intent to mine his unpatented[1] mining claim[2] from "April until the weather closes operations in the fall." ER 22.[3] Defendant stated in his NOI that he intended to mine "using hand tools except for the in-water period when we

---

[1] "An 'unpatented' claim is a possessory interest in a particular area solely for the purpose of mining; it may be contested by the government or a private party." *United States v. Backlund*, 689 F.3d 986, 991 (9th Cir. 2012)(quotation omitted). A patented claim results in a fee-simple interest in the claimant from the United States, and "no contest can be brought against the claim." *Id.* at 991 n.3 (quotation omitted).

[2] Defendant's claim is located on the banks of the Wild and Scenic North Fork John Day River along Forest Service Road 5506 in the North Fork John Day District of the Umatilla National Forest.

[3] "ER" refers to the government's Excerpt of Record (#33).

2 - OPINION AND ORDER

intend to operate suction dredges of 4 inch or smaller intakes."
*Id*.  Defendant also stated "[s]ewage will be collected in a
port-a-potty at the campsites and disposed of at a suitable
disposal site.  Work site waste will be 'bear-in-the-woods'
utilizing 'cat holes' south of the work site and distant from the
river."  ER 23.

On April 25, 2012, Acting District Ranger Joy Archuleta sent
Defendant a letter in which she noted the Forest Service's
understanding that, among other things, Defendant intended to
work "the claim intermittently from April through October" 2012;
"no equipment will be left onsite after Oct 30, 2012"; and a
"port-a-potty will be used at the site and the resulting sewage
will be disposed of at a sewage disposal site and not buried or
left on top of National Forest System lands."  ER 24-25.  Based
on that understanding, Archuleta advised Defendant that his
"proposed activities . . . will not require a formal Plan of
Operations."  ER 25.  Archuleta further advised Defendant:

> Please remember that you are responsible to ensure
> your activities are conducted in such a manner
> that no adverse environmental impacts to National
> Forest resources occur (36 CFR 228.8).  If you
> intend to increase your operations, and it might
> cause a "significant" disturbance of the surface
> resources, you are required to provide notice to
> this office (36 CFR 228.4).  Continued use of this
> area and/or cumulative effects beyond your control
> may require you to submit a Plan of Operations.
> This determination will need to be made on a
> yearly basis . . . but it could also happen
> during the year if conditions change (36 CFR
> 228.4(a)(2)).

3 - OPINION AND ORDER

ER 25.

Pursuant to the regulations governing Forest Service oversight of mining operations, Helberg inspected Defendant's mining site on April 30, 2012, and July 19, 2012.  ER 26-29.

On September 26, 2012, Helberg inspected Defendant's site with Caty Clifford and noted Defendant had brought a second trailer onto the site "for storage."  ER 31.  Helberg advised Defendant that he was allowed to have only one trailer because he was prospecting and, therefore, "doesn't need any storage." ER 31.  Helberg directed Defendant to remove the second trailer and "clean up the place."  Id.  Helberg noted in her Mining Inspection Form that Defendant "made a joking comment about staying all year around and [Helberg] reminded [Defendant] of his Oct NOI date and the fact that this area gets snowed in."  Id. Clifford expressed concern because the "site is so close to the river that an accidental spill from a chemical toilet could easily get into the river."  Id.

On November 1, 2012, Helberg inspected Defendant's site again and noted the second trailer had not been removed from the site.  Helberg noted in her Mining Inspection Form that an individual mining the site with Defendant "was upset that [Defendant] had told him that it was okay to bring in his camper for the winter when we were expecting him to leave."  ER 33. When Helberg talked with Defendant about his "intent to stay on

the claim all winter, he made no bones about it and was very up front." ER 33.  Helberg reviewed with Defendant his March 2012 NOI as well as the Forest Service's concerns about Defendant remaining on the site through the winter.  Helberg left Defendant a "blank POO [Plan of Operations] form" to apply to stay on the site all winter.  *Id.*

On November 12, 2012, District Ranger Robert Varner sent Defendant a Notice of Noncompliance for his mining site.  Varner advised Defendant that, among other things:

> It has come to my attention that your activities on the claim have exceeded those that were described in your Notice of Intent (NOI) which you submitted on March 16, 2012.
>
> * * *
>
> On Nov 1, 2012 a follow up and year-end inspection was completed by Chris Helberg in which she found that you were still on site and had no intention of leaving the site for the winter. Your continued occupancy of the site along with additional equipment is considered significant under 36 CFR 228.4 (4) and will require an approved Plan of Operations.  You have until November 21, 2012 to winterize your operations and remove your trailers, tents, camper and other associated living quarters.
>
> * * *
>
> Until a Plan of Operations is submitted and approved; you will need to remove the following items by Nov 21, 2012.  Failure to remove these items will result in a citation and fine under 36 CFR 261.10(b) and 36 CFR 261.10(p).
>
> * * *
>
> You are hereby notified that you are in

non-compliance of the requirements of Title 36,
Code of Federal Regulation (CFR)228.4 (a)(Plan of
Operation-Notice of intent-requirements), 228.5(a)
(Operations shall be conducted in accordance with
an approved Plan of Operations), 261.10(b)
(Occupying National Forest System lands without
authorization), and 36 CFR 261.10(p) Use or
occupancy of National Forest System lands or
facilities without an approved operation plan when
such authorization is required.

ER 51-52.

On November 15, 2012, Helberg visited Defendant's mining

site again and hand-delivered a copy of Varner's November 12,

2012, letter to Defendant.  Helberg reported in her Mining

Inspection Form that she spoke to Defendant for about 30 minutes,

and Defendant "was very adamant about staying the winter."

ER 36.  She and Defendant also talked about the following

- Must leave until POO is approved and
  Bond in place
- He asked about moving to another
  location (again year around so must be
  warranted in a POO)
- Ask him it he planned to mine in the
  snow, he said no, didn't mine in the
  rain either
- He referenced a case on the coast were
  [*sic*] the people only had to pay 2000$
  to get there [*sic*] stuff back
- I discussed what would happen next,
  o  Law enforcement would come on the
     next visit
  o  If we had to remove his property
     then he would have to pay for the
     removal
- Asked if he could bid on the removal of
  the property.

ER 36.

On November 29, 2012, Helberg visited Defendant's mining

6 - OPINION AND ORDER

site with "Law Enforcement Officer DeWayne Ross."  Defendant was
not there, but his equipment remained at the site (including two
trailers, a camper, and various other things).  Helberg took
pictures of the site and the items remaining there.

On December 6, 2012, Defendant met with Varner, Helberg, and
Ross at the Forest Service Office in Ukiah, Oregon.  The meeting
was preserved on videotape, portions of which were presented as
evidence at trial.  At the December 6, 2012, meeting Varner
advised Defendant that Defendant's stay on his mining site longer
than 14 days "creates impacts on the resources."  ER 74.  Varner
noted "[t]he fact that [Defendant has] tents and trailers that
are there for a longer period of time than basically just a[n]
incidental use - fourteen days, you're in, you're doin' your
stuff, and then when you go back, you take your trailer and stuff
with you" was causing an impact on the salmon steelhead "rearing
habitat" on the river.  ER 74.  Defendant conceded the type of
mining he was doing was "pick and shovel mining."  ER 75.
According to Varner, therefore, "[i]t fits in the back of your
pick up or your rig or whatever.  It's transitory:  it can go
with you, it can come with you, it can leave with you."  ER 75.
Varner made clear he was not telling Defendant that he could not
mine, but he was telling Defendant that he could not "make a
residence on the forest."  ER 75.  Defendant disagreed and stated
he believed he had a right to be at the site for as long as he

7 - OPINION AND ORDER

needed to be.   ER 75.   Finally, Varner, Ross, and Defendant had

the following exchange:

> Ross:      When can you have that stuff gone so you
>            can move forward?
>
> Wasson:    Uh.  Probably not until Wednesday next
>            week.
>
> Ross:      What day would that be?
>
> Varner:    That'd be the thirteenth.
>
> Ross:      That'd be the thirteenth? - That'd be
>            the twelfth.  The twelfth would be
>            Wednesday.  Ok.
>
> Wasson:    Thirteenth.  In the process, I'll move
>            it.
>
> Ross:      Sir, I'll need you to move it.  This is
>            a letter-cease and desist - if you don't
>            have that equipment out by the
>            sixteenth, you will be charged.
>
> Varner:    It will be removed.  And the cost of
>            removing that, you won't get that back.

ER 76.   Varner presented Defendant with a cease-and-desist letter

in which Varner advised Defendant in pertinent part:

> This letter is regarding the illegal occupancy and
> use located along the Scenic portion of the
> federally designated Wild and Scenic North Fork
> John Day River in Township 7 South, Range 33 East,
> Section 8 of the Willamette Meridian.
>
> You . . . have been occupying and using National
> Forest System lands without authorization since
> October 30, 2012, the date you stated in your
> Notice of Intent would be the last day of
> operations.
>
> * * *
>
> You are to cease and desist all unauthorized use

and occupancy of National Forest Lands and remove
all of the trailers, campers, equipment and
personal items from National Forest System lands
by December 16, 2012.  After that date, the
continued occupancy and use of public lands
without authorization will result in criminal
charges.

ER 53.

Defendant did not appeal Varner's decision or the cease-and-desist letter.

On January 25, 2013, Helberg and Ross visited Defendant's mining site and noted the river was almost completely frozen over, snow covered the ground, and there was not any evidence that Defendant was conducting mining operations.  ER 38-39. Nevertheless, two trailers, one shower tent, solar panels, and Defendant's car were still at the site, and Defendant continued to live at the site.  Helberg and Ross documented their site visit via video recording.  The recording reflects Helberg reminded Defendant that the cease-and-desist letter of December 6, 2012, required Defendant to remove his property from the site by December 16, 2012.  Helberg then gave Defendant "notice to impound papers" and advised Defendant they were going to have to tow Defendant's trailers and remove his items from the site.  ER 40, 77.

On February 28, 2013, Area Mining Geologist Kathleen Anders submitted a Preliminary Investigation memorandum to Varner in which she concluded Defendant's

9 - OPINION AND ORDER

> residence on the National Forest System lands is
> not reasonably incident to mining.  During the
> winter months, mining is not possible on the claim
> due to the snow and ice cover.  Further, the low
> level of mining activity, which consists of
> panning and suction dredging, lack of mechanized
> mining equipment, easy access onto the claim, and
> close proximity to several towns indicate that
> occupancy is not necessary for mining any time of
> year and could not be approved under a Plan of
> Operation.

ER 56.

On March 14, 2013, Helberg inspected Defendant's mining site
and noted only a tarp covering a boat, buckets, and other
personal property remained.  ER 41.

At the trial before Magistrate Judge Patricia Sullivan,
Forest Service Special Agent John Matye testified he and other
law-enforcement personnel inspected and documented Defendant's
mining site on April 1, 2013.  Tr. 92-95.  Matye testified law-
enforcement personnel found, among other things, a "white bucket
that contained human feces" at the mining site that had to be
cleaned up.  Tr. 93.  Matye testified in pertinent part:

> It was cleaned up.  As officers, we are taught how
> to deal with hazardous materials and other items,
> and that you have to have hepatitis shots, some
> special personal protective equipment.  We didn't
> have any of that available as far as to deal with
> that kind of equipment, so it was cleaned up I
> believe the next day by some forest staff that had
> the proper training and equipment.

Tr. 94.

Matye testified human fecal matter is a hazard because it
contains bacteria and other types of disease-

10 - OPINION AND ORDER

transmitting materials.  Dealing with my
experience in marijuana grows and other types, if
you get that on you, you need to be washed off.
Generally, we put people through a series of shots
that encounter that.  Hepatitis types B and C are
commonly transmitted.  I'm not a paramedic or
advanced medically, other than we know to stay
away, because it can get you seriously sick.

Tr. 94.  Agent Matye cited Defendant with violations of 36 C.F.R.

§ 261.11(d) (failing to dispose of sewage), § 261.10(a)

(constructing or maintaining a structure on Forest System lands),

§ 261.10(b) (occupying Forest System lands without authorization),

and § 261.10(f) (placing a hazard on Forest System lands).  Law-

enforcement agents impounded Defendant's property.

On July 17 and July 23, 2013, Magistrate Judge Sullivan

conducted a trial as to Defendant's violations of 36 C.F.R.

§ 261.11(d) (failing to dispose of sewage), § 261.10(a)

(constructing or maintaining a structure on Forest System lands),

§ 261.10(b) (occupying Forest System lands without authorization),

and § 261.10(f) (placing a hazard on Forest System lands).

Before trial the parties stipulated to the following:

(1)   Defendant continuously occupied a 14-foot
      trailer from April 30, 2012, until
      approximately March 14, 2013, on National
      Forest System lands.

(2)   Defendant placed a 19-foot trailer and a
      14-foot trailer on his claim, which is on
      National Forest System lands.

(3)   All property found at the mining site
      (Slippery Rocks) was Defendant's including

buckets, screens, miscellaneous hand tools,
etc.

(4)   All allegations occurred within the Umatilla
National Forest, which is part of National
Forest System lands and also within Grant
County.

(5)   Defendant recorded a "Notice of Location of
Mill Site" with the BLM, ORMC 170058, which
is located approximately one quarter mile
from his mining (Slippery Rocks) site.

On July 17, 2013, the government called Varner, Helberg, and

Matye to testify.  Varner testified in pertinent part that

Defendant's mining activities were "very low impact . . . and

those activities are . . . not incident to his residence because

they are not at the level of where he needs to reside to protect

his equipment in the case of a large mining operation."  Trial

Tr. 19.  Varner testified the type of mining activity that

Defendant was engaged in (prospecting) only required the use of

"gold pans, shovels, buckets," all of which "could easily fit in

a vehicle like the trunk of a car or the back of a pickup."

Tr. 19.

Varner also testified several communities were within

driving distance of Defendant's claim:  Dale is ten miles from

the claim; Meadowbrook, which has a store and trailer park, is

about fifteen miles away; Ukiah is twenty miles away; and Pilot

Rock, where Defendant was domiciled, is fifty miles away.

Tr. 141.  Varner noted many miners drive to their claims from

these communities.  Tr. 141.  Varner also testified because of

12 - OPINION AND ORDER

the type of mining in which Defendant was engaged, Defendant
could not prospect if the river was frozen as it was during the
period in which Defendant remained on his mining site after
October 31, 2012.  Tr. 49.

Varner conceded he gave Defendant a special-use
authorization, which allowed Defendant to camp beyond the
fourteen-day limit until October 30, 2012.  Tr. 39.  After
October 30, 2012, however, Defendant was not authorized by the
special-use authorization to remain living on the site, Defendant
was not exempted from special-use authorization, and Defendant
did not have a POO or NOI in place for remaining on the site
after October 30, 2012.  Tr. 142-43.

Varner also testified at length regarding his determination
that Defendant's continued occupancy at the mining site would
create a significant surface disturbance because consistent
occupancy in close proximity to the North Fork John Day River
could impact the numerous endangered fish that live in the river.
See, e.g., Tr. 24, 26-27.

Helberg testified that based on her experience as a District
Minerals and Special Use Administrator, Defendant did not require
permanent residence at the site to perform operations in light of
his minimal mining activity.  Tr. 174-75.  Helberg also testified
prospecting was impossible during the winter because snow covered
the ground and the river was frozen over.  Tr. 62.  Helberg noted

13 - OPINION AND ORDER

even though it is theoretically possible to conduct mining
activities in a trailer, it would not be reasonable to do so
under these circumstances because Defendant would need a water
supply and a significant amount of raw material.  Tr. 156-57.
Helberg also clarified it is normal for miners to take "their
concentrates home with them and actually do the final work [at
home]."  Tr. 82.  Moreover, as reflected in her November 15,
2012, Mining Inspection Form, Defendant told Helberg that "he
didn't mine in the snow or in the rain."  Tr. 153.

     Helberg also testified about Area Mining Geologist Kathleen
Anders's report in which Anders concluded Defendant's claim was
not remote and that it was within forty miles of his Post Office
Box.  Tr. 166.  Helberg pointed out that one of Defendant's
fellow claimants commuted twenty minutes from Meadowbrook to get
to the mining site without difficulty.  Tr. 82.  In addition,
Defendant did not have special-use authorization to remain on the
property or authorization to remain on the property under a POO.
Tr. 66, 171.

     Matye testified regarding the bucket of fecal matter found
at the mining site in April 2013.  During his testimony Matye
played the video recording taken on the day he found the bucket
of fecal matter.

     Magistrate Judge Sullivan found Defendant guilty of
occupying Forest System lands without authorization pursuant to

14 - OPINION AND ORDER

36 C.F.R. § 261.10(b) and failing to dispose of sewage under § 261.11(d). Magistrate Judge Sullivan found Defendant not guilty of constructing or maintaining a structure on Forest System lands under § 261.10(a) nor of placing a hazard on Forest System lands under § 261.10(f).

On July 23, 2013, Magistrate Judge Sullivan also made the following findings of fact and conclusions of law on the record after trial:

1. Defendant's claim is located in the Wild and Scenic portion of the North Fork of the John Day River.

2. Defendant was required to submit a NOI under § 228.4(a)(1)(v) because he was engaged in dredging and camping beyond 14 days, which are both beyond the activities of other users of the forest.

3. The Forest Service never questioned Defendant's right to mine.

4. The Forest Service allowed defendant to camp beyond 14 days until October 30, 2012.

5. Defendant remained beyond October 30, 2012 without authorization.

6. The Forest Service requested a plan of operations to evaluate Defendant's new, unauthorized use of the forest.

7. The Forest Service attempted to work with Defendant to bring him in compliance after October 30, 2012.

8. The Forest Service had authority to ask for a plan of operations and Defendant refused to submit one.

9. Defendant was not authorized to occupy Forest

> lands and did not appeal the Forest Service's
> decision to request a plan of operations,
> thereby exhausting his remedies.

10. Mining does not authorize occupancy *per se*.

11. Defendant's prospecting activities did not
    rise to the level of mining that would
    warrant constant occupancy.

12. Defendant failed to conform to his NOI which
    authorized his disposal of sewage in a "port-
    a-potty."

On September 30, 2013, Magistrate Judge Sullivan entered a Judgment against Defendant in which she assessed two fines totaling $400 for Defendant's offenses and suspended the fines on the condition that Defendant not reside on Forest Service land unless and until he had appropriate authorization from the Forest Service.

On September 30, 2013, Defendant filed an appeal of the Judgment with this Court.

On October 25, 2013, this Court appointed counsel for Defendant.

On April 4, 2014, this Court heard oral argument on Defendant's appeal and took the matter under advisement.

## DISCUSSION

As noted, Defendant was convicted of occupying Forest System lands without authorization in violation of 36 C.F.R. § 261.10(b) and failing to dispose of sewage in violation of § 261.11(d).

16 - OPINION AND ORDER

## I.  Standards

When challenging the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Strong*, 79 F.3d 925, 928 (9th Cir. 1996)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The court must assume the magistrate court resolved all evidentiary conflicts in favor of the judgment. *United States v. Alzate-Restreppo*, 890 F.2d 1061, 1064 (9th Cir. 1989). Factual findings of a magistrate will not be overturned unless they are clearly erroneous. *United States v. Doremus*, 888 F.2d 630, 631 (9th Cir. 1989).

## II.  Conviction for Violation of 36 C.F.R. § 261.10(b)

Defendant asserts he "should be acquitted" of violating § 261.10(b) because he was lawfully occupying his recorded mining claims and was "otherwise authorized by statute or regulation to lawfully occupy his mining claims." Specifically, Defendant asserts Congress expressly intended for claimants to occupy mining claims under 30 U.S.C. § 22, and there is a conflict between regulation of National Forest lands by the Forest Service and the regulation of mining claims by the Bureau of Land Management.

The Ninth Circuit addressed the conflict between the various mining and forest-management statutes and regulations recently in *United States v. Backlund*, 689 F.3d 986 (9th Cir. 2012). In *Backlund* the defendants asserted they were engaged in *bona fide* mining activities on National Forest System lands, which justified full-time residency on their respective claim sites. The Forest Service, however, concluded the defendants' residences were not reasonably incident to qualifying mining operations, and, therefore, full-time residency on their claim sites was not authorized by the mining laws. In addition, the defendants did not have special-use authorizations permitting them to reside year-round on their claim sites. As a result of its conclusions, the Forest Service instructed the defendants to cease residing on National Forest System lands. The defendants did not stop living on their claim sites, and the government prosecuted them under 36 C.F.R. § 261.10(b), which prohibits "[c]onstruction, reconstructing, improving, maintaining, occupying or using a residence on National Forest System lands unless authorized by special-use authorization or approved operating plan when such authorization is required." The Oregon District Court found the defendants guilty of violating § 261.10(b). The defendants appealed their convictions to the Ninth Circuit on the ground that, among other things, the Forest Service exceeded its authority by regulating the defendants' residency on their

mining-claim sites. *Id.* at 990. The Ninth Circuit upheld the

defendants' convictions and concluded, among other things, that

the "Forest Service may regulate residential occupancy of *bona*

*fide* mining claims within the national forests, and . . .

§ 261.10(b) is consistent with the mining laws." *Id.* The Ninth

Circuit explained the interaction between the various mining and

national forest management laws that governed the defendants'

convictions:

> Under the Mining Law of 1872, an individual who
> discovers a valuable mineral deposit on federal
> land may locate a mining claim. The statute
> provides that so long as the claimant complies
> with federal, state and local law, he shall have
> "exclusive right of possession and enjoyment of
> all the surface included within the lines of [his]
> locations." 30 U.S.C. § 26. This right is
> subject to certain limitations.
>
> First, under the Multiple Use Act of 1955 "[a]ny
> [unpatented] mining claim hereafter located . . .
> shall not be used . . . for any purposes other
> than prospecting, mining or processing operations
> and uses reasonably incident thereto." 30 U.S.C.
> § 612(a). . . . The act also "reserve[s] to the
> United States the right to manage and dispose of
> surface resources on unpatented mining claims,"
> *United States v. Doremus*, 888 F.2d 630, 632 (9th
> Cir. 1989), with the caveat that the government's
> use shall not "endanger or materially interfere
> with prospecting, mining or processing operations
> or uses reasonably incident thereto," 30 U.S.C.
> § 612(b). Thus, under the mining laws, use of an
> unpatented mining claim on public land is limited
> to activities that are reasonably incident to
> prospecting, mining and processing operations, and
> subject to the right of the United States to
> manage surface resources.
>
> Second, under the Organic Administration Act of
> 1897, mining operations on National Forest System

lands are subject to rules and regulations promulgated by the Secretary of Agriculture for the protection and preservation of the national forests. *See* 16 U.S.C. § 551. The act recognizes "prospecting, locating, and developing the mineral resources" of the national forests as "proper and lawful" uses of National Forest System lands, but individuals engaged in those activities, "must comply with the rules and regulations covering [the] national forests." 16 U.S.C. § 478. Under these rules, depending on the type and scope of the activity at issue, different requirements apply.

The rules set forth at 36 C.F.R. part 228, subpart A, cover mining operations and uses reasonably incident thereto on National Forest System lands. Under these rules, mining operations that will likely cause, or are causing, significant surface disturbance must be covered by an approved operating plan issued by the Forest Service. *See* 36 C.F.R. § 228.4(a)(4).[4] Mining operations that are not likely to cause significant surface disturbance do not require an approved operating plan. *See id.* § 228.4(a)(1), (3). Most uses of National Forest System lands not related to mining are "special uses," which require special use authorization under § 251.50(a).[5]

*Id.* at 991-92 (citations omitted). With respect to the

defendants' assertions that the Forest Service may not regulate

---

[4] 36 C.F.R. § 228.4(a)(4) provides: "If the District Ranger determines that any operation is causing or will likely cause significant disturbance of surface resources, the District Ranger shall notify the operator that the operator must submit a proposed plan of operations for approval and that the operations can not be conducted until a plan of operations is approved."

[5] 36 C.F.R. § 251.50(a) provides: "All uses of National Forest System lands, improvements, and resources, except those authorized by the regulations governing . . . minerals (part 228) are designated 'special uses.' Before conducting a special use, individuals or entities must submit a proposal to the authorized officer and must obtain a special use authorization from the authorized officer."

residency on *bona fide* mining claims and that § 261.10(b) did not

apply to them, the Ninth Circuit held "[m]ere ownership of an

unpatented mining claim does not automatically entitle the owner

to reside permanently on National Forest System lands." *Id.* at

995. The Ninth Circuit reasoned:

> The mining laws permit residency on a mining claim
> only to the extent reasonably necessary to mining
> operations. . . . In addition, the Forest Service
> has concluded that because long-term residential
> occupancy is likely to cause significant surface
> disturbance, mining operations involving
> residential use typically require an approved plan
> of operations. . . . Here, the Forest Service
> determined that [the defendant's] activities,
> including the presence of permanent structures and
> a travel trailer, were causing a significant
> surface disturbance. Accordingly, even assuming
> that [the defendant] had a right to reside on his
> claim, he may not exercise that right without
> first obtaining approval of [his] operation in the
> manner specified in 36 C.F.R. Part 228. This
> prior approval requirement does not endanger or
> materially interfere with [the defendant's] mining
> operations and is therefore permissible under the
> statutory scheme.
>
> The Forest Service also found that full-time
> residency was not reasonably necessary to [either
> defendant's] mining operations. Thus, residential
> use of their claims was not authorized by the
> mining laws and regulations. Rather, under these
> circumstances, their residencies constituted a
> special use under § 251.50(a), requiring special
> use authorization, which neither had. *See* 36
> C.F.R. § 251.50(a); 73 Fed. Reg. at 65,994 (noting
> that residency that is not reasonably necessary to
> mining operations "is not an operation for
> purposes of 36 CFR 228.3 which is authorized by
> the United States mining laws . . . [but rather]
> constitutes a special use").
>
> In effect, [defendants] contend that a mining
> claimant's residency on his claim is always

reasonably incident to mining, so long as the
claim is valid.  They suggest that we adopted this
rule in *United States v. Shumway*, 199 F.3d 1093
(9th Cir. 1999).  We did not.  In *Shumway*, we
simply recognized that residence on a *bona fide*
mining claim may be reasonably incident to mining
operations and concluded that the defendants in
that case had established a genuine issue of fact
as to whether their travel trailer qualified as
such.  *See id.* at 1106.  We did not hold that
residential occupancy of a valid mining claim was
always authorized under the mining laws.  Indeed,
neither the mining laws nor our precedent supports
such a rule.

We agree with the district court that 36 C.F.R.
§ 261.10(b) is consistent with the mining laws.
Requiring prior approval of residential occupancy
is a reasonable method of administering the
statutory balance between the important interests
involved here—the interest of miners in reasonable
use and enjoyment of their claims, and the
interest of the government in improving and
protecting the surface resources of the national
forests.

*Id.* 995-96.

Here, as in *Backlund,* the Forest Service found full-time

residency by Defendant was not reasonably necessary to his mining

operations.  The Forest Service's conclusion is bolstered by the

February 2013 Preliminary Investigation Memorandum of Area Mining

Geologist Kathleen Anders in which she concluded, based on her

experience and expertise, that Defendant's

residence on the National Forest System lands is
not reasonably incident to mining.  During the
winter months, mining is not possible on the claim
due to the snow and ice cover.  Further, the low
level of mining activity, which consists of
panning and suction dredging, lack of mechanized
mining equipment, easy access onto the claim, and
close proximity to several towns indicate that

22 - OPINION AND ORDER

occupancy is not necessary for mining any time of
year and could not be approved under a Plan of
Operation.

ER 36.  In fact, the record reflects Defendant told Heglund that

he did not mine in the winter.  According to *Backlund*, therefore,

Defendant's residence after October 30, 2012, constituted a

special use under § 251.50(a) that required a special-use

authorization, which Defendant did not have.  *See* 36 C.F.R.

§ 251.50(a) and 73 Fed. Reg. at 65,994 (Residency that is not

reasonably necessary to mining operations "is not an operation

for purposes of 36 CFR 228.3 which is authorized by the United

States mining laws . . . [but rather] constitutes a special

use.").

In addition, the Ninth Circuit in *Backlund* rejected the

argument Defendant offers here:  that residency on his mining

claim is always reasonably incident to mining as long as his

claim is valid.  689 F.3d at 996.

Viewing the evidence in the light most favorable to the

prosecution, the Court concludes the record at trial was more

than sufficient for a rational trier of fact to find that

Defendant's continued residency on his mining claim after

October 30, 2012, was not necessary or incident to his mining

claim and was likely to cause significant surface disturbance due

to his proximity to the river.  Accordingly, the Court concludes

Magistrate Judge Sullivan did not commit clear error when she

23 - OPINION AND ORDER

found Defendant guilty of occupying Forest System lands without authorization in violation of 36 C.F.R. § 261.10(b).

## III. Conviction for Violation of 36 C.F.R. § 261.11

Magistrate Judge Sullivan also found Defendant violated § 261.11(d), which prohibits "[f]ailing to dispose of all garbage, including any . . . sewage, waste water or material . . . either by removal from the site or area, or by depositing it into receptacles or at places provided for such purposes."

Defendant contends he should be acquitted of violating § 261.11(d) because

> he was storing sewage in a "receptacle" for the purpose of disposing of it off site when it was full. Storing the sewage in a covered "white bucket" did not violate any Forest Service rules or regulations, and no violations were offered at trial, except for the argument that Mr. Wasson failed to remove it. Also, Mr. Wasson was not notified that storing sewage in a covered bucket did not meet with Forest Service rules or regulations prior to citing him for a violation of 36 C.F.R. 261.11(d).

Def.'s Opening Brief at 10. Specifically, Defendant contends the white bucket was a "receptacle" as that term is defined in the dictionary, and, therefore, his placement of feces in the receptacle was not in violation of § 261.11(d).

As the government points out, however, the regulation requires placement of waste material in a "receptacle . . . provided for such purposes" rather than mere placement of waste material in any receptacle. According to the government, the

24 - OPINION AND ORDER

modifying phrase "provided for such purposes" applies to "receptacle" and implies the receptacle is to be provided by the Forest Service.  It is undisputed that the Forest Service did not provide Defendant with a bucket to hold human feces.

In addition, Defendant in his NOI assured the Forest Service that "sewage will be collected in a port-a-potty at the campsites and disposed of at a suitable disposal site," and "work site waste will be 'bear-in-the-woods' style utilizing 'cat holes' south of the work site and distant from the river."  ER 23.  The bucket at Defendant's mining site, however, was neither a port-a-potty nor a "cat hole" far from the river.  Accordingly, Defendant was not disposing of waste material in the receptacle that the Forest Service approved in Defendant's NOI.

To the extent that Defendant contends he did not violate § 261.11(d) because he intended to dispose of the feces that were in the bucket at some point, § 261.1 makes clear that Defendant's intent is irrelevant.  See § 261.1 ("Unless an offense set out in this part specifies that intent is required, intent is not an element of any offense under this part.").

Finally, although Defendant states in the introduction to his appeal that he should be acquitted because he was not notified that storing sewage in a covered bucket did not meet Forest Service rules or regulations before he was cited for a violation of 36 C.F.R. § 261.11(d), Defendant did not make any

25 - OPINION AND ORDER

legal or factual argument to support this assertion in the body
of his analysis.  More importantly, the trial and sentencing
transcripts do not reflect Defendant raised the issue of prior
notice before the Magistrate Judge.  The Ninth Circuit has made
clear that courts of appeals "do not consider issues raised for
the first time on appeal." *See, e.g., Thurmond v. Cool*, No. 12-
17782, 2014 WL 278949, at *1 (9th Cir. Jan. 27, 2014); *Jensen v.
Wash. State Dep't of Corr.*, 543 F. App'x 691, 692 (9th Cir. 2013)
("We do not consider issues raised for the first time on
appeal."); *United States v. Thomas*, 726 F.3d 1086, 1092 n.5 (9th
Cir. 2013)("Our court will review an issue raised for the first
time on appeal 'when a change in law raises a new [purely legal]
issue while an appeal is pending,' and it is not inequitable to
take it up." (quoting *Native Ecosys. Council v. Weldon*, 697 F.3d
1043, 1051 (9th Cir. 2012)).  Accordingly, the Court declines to
address the notice issue raised by Defendant for the first time
on appeal.

Viewing the evidence in the light most favorable to the
prosecution, the Court concludes the record at trial was
sufficient for a rational trier of fact to find Defendant's
leaving of human feces in a bucket constituted failure "to
dispose of all garbage, including any . . . sewage, waste water
or material . . . either by removal from the site or area, or by
depositing it into receptacles or at places provided for such

purposes." Accordingly, the Court concludes Magistrate Judge Sullivan did not commit clear error when she found Defendant guilty of violating 36 C.F.R. § 261.11(d).

### CONCLUSION

The Court **AFFIRMS** the Judgment entered on September 30, 2103, in favor of the government and **DISMISSES** this appeal.

IT IS SO ORDERED.

DATED this 19th day of May, 2014.


_____
ANNA J. BROWN
United States District Judge

27 - OPINION AND ORDER